Joseph D. **HARBAUGH,** Plaintiff,

v.

Christian Rene **GRESLIN,** Patrick Pirim, Igor Marie De L'Isle a/k/a Jean Pierre Marie L'Isle, Holding Bev, S.A., and Carlus Magnus Limited, Defendants.

Joseph D. Harbaugh,
Plaintiff/Judgment
Creditor,

v.

Pyrros N. Vardinoyannis, Third–Party Defendant.

No. 0361674CIV.

United States District Court, S.D. Florida.

June 2, 2006.

Robert N. Harris, Esq. and William J. Brown, Esq., Miami, FL, for Plaintiff.

Joseph A. DeMaria, Esq., Kenneth D. Murena, Esq., and Maria N. Vernace, Esq., Miami, FL, for Defendants.

## ORDER ON VARIOUS MOTIONS

COHN, District Judge.

**THIS CAUSE** came before the Court on Impleaded Third Party Pyrros N. Vardinoyannis' Motion to Dismiss Impleader Complaint [DE 644], Judgment Creditor Joseph D. Harbaugh's Second Motion For an Order of Contempt Against Impleaded Third Party [DE 711], Judgment Creditor's Motion For Leave to File a Sur–Reply to Impleaded Third Party's Reply in Support of Impleaded Third Party's Motion to Dismiss Impleader Complaint [DE 712], and Impleaded Third Party's Motion to Strike Judgment Creditor's Second Motion For an Order of Contempt Against Impleaded Third Party [DE 713]. The Court has considered these Motions, the respective Responses [DE 694, 713] and the supporting documentation [DE 704, 705], the respective Replies [DE 708, 725], Judgment Creditor's Sur–Reply [DE 712], and pertinent portions of the record and is otherwise fully advised in the premises.[1]

This matter concerns post-judgment proceedings supplementary. Judgment Creditor obtained a judgment in the amount of $2,623,232.86, plus post-judgment interest, following a jury verdict finding Judgment Debtors Christian Rene Greslin, Patrick Pirim, Igor Marie De L'Isle, Holding BEV, S.A., and Carlus Magnus Limited liable for breach of contract. (Amended Final Judgment, ¶ 3 (Feb. 9, 2005) [DE 419].) Additionally, the Court awarded Judgment Creditor $625,442.14 in attorney's fees. (Final Judgment For Attorney's Fees and Costs (April 12, 2005) [DE 462].) Judgment Creditor brought Impleaded Third Party into this action based on allegations that

---

1. In a prior Order, the Court noted that it would withhold ruling on the above Motion to Dismiss until the parties could complete discovery regarding personal jurisdiction. (*See* Order on Various Discovery Motions at 8 (Jan. 31, 2006) [DE 728].) As Magistrate Judge Lurana S. Snow has ruled on all pending discovery motions, discovery now appears completed and the Motion to Dismiss is fully briefed and ripe.

he holds funds owned by or due to Judgment Debtors and is an alter ego or partner to one or more Judgment Debtors. (Compl. Impleading Pyrros N. Vardinoyannis, ¶¶ 3–6 (Aug. 25, 2005) [DE 573].)

## I. *MOTION TO DISMISS*

Impleaded Third Party argues in his Motion to Dismiss that the Court lacks personal jurisdiction over him under both Florida's long-arm statute and the Due Process Clause of the Fourteenth Amendment. Impleaded Third Party states by affidavit that his only contact with Florida is through his use of a Florida-based mail forwarding service for purposes wholly unrelated to Judgment Creditor's cause of action. Judgment Creditor argues in response that the Court has personal jurisdiction pursuant to Impleaded Third Party's business affiliation with Judgment Debtors De L'Isle and Holding BEV. Such affiliation, Judgment Creditor argues, meets the standards of both Florida's long-arm statute and the Due Process Clause. Moreover, Judgment Creditor alleges that Impleaded Third Party's mailbox address in Florida is sufficient to satisfy the minimum contacts requirement of the Due Process Clause.

■ In order to determine jurisdiction over a nonresident party when sitting in diversity, a federal court must undertake a two-part analysis. *Sculptchair, Inc. v. Century Arts. Ltd.,* 94 F.3d 623, 626 (11th Cir.1996). First, the court must determine whether it has jurisdiction pursuant to the state long-arm statute. *Id.* Second, if there is a basis for the assertion of personal jurisdiction under the state statute, the court must next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95

(1945); *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989).

■ The Florida long-arm statute provides, in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

Florida Statutes § 48.193. The reach of this provision is a question of Florida law. *Cable/Home Communication Corp. v. Network Prods., Inc.,* 902 F.2d 829, 856 (11th Cir.1990).

■ Judgment Creditors have the initial burden of establishing a prima facie showing of personal jurisdiction. *Id.* at 855. Once Judgment Creditor has done so, the burden shifts to Impleaded Third Party to challenge Judgment Creditor's allegations by affidavits or other evidence. *Sun Trust Bank v. Sun International Hotels, Ltd.,* 184 F.Supp.2d 1246, 1267 (S.D.Fla.2001). If Impleaded Third Party sufficiently challenges Judgment Creditor's assertions, Judgment Creditor "must affirmatively support [his] jurisdictional contentions with record evidence, and may not merely rely upon the factual allegations set forth in the complaint." *Id.* "Where the parties' evidence conflicts, the Court must construe all reasonable inferences in favor of" Judgment Creditor. *Id.*

■ Here, Judgment Creditor has met his initial burden of providing a prima facie case of personal jurisdiction in his

Third–Party Complaint. Among other allegations in the Complaint, Judgment Creditor claims that Impleaded Third Party engaged in substantial business activities within Florida through his agents, Judgment Debtors. Impleaded Third Party disputes this allegation, testifying in a declaration that he has "absolutely no business affiliation with any of the Judgment Debtors." (Decl. of Pyrros Vardinoyannis, ¶ 5, attached as Ex. A to Impleaded Third Party's Mot. to Dismiss Impleader Compl. For Lack of Personal Jurisdiction (Nov. 14, 2005) [DE 644] ("Vardinoyannis Decl.").) Impleaded Third Party also states he is not the "alter ego" of any of Judgment Debtors, (*id.,* ¶ 4), nor has he ever been "an officer, director, partner, shareholder, employee, or representative of any of the Judgment Debtors," (*id.,* ¶ 6). Additionally, he states that he has never "used any of the Judgment Debtors for any improper purpose," (*id.,* ¶ 7), "[n]one of the Judgment Debtors are, or have ever been, [his] agent for any purpose or in any context," (*id.,* ¶ 9), and he has never "exercise[d] … any control over, or dominated, any of the Judgment Debtors," (*id.,* ¶ 10).

In response, Judgment Creditor submits evidence to demonstrate that Judgment Debtors De L'Isle and Holding BEV were agents, partners, or alter egos of Impleaded Third Party. Taken in a light most favorable to Judgment Creditor, this evidence fails to demonstrate any such relationships.

■ First, with respect to the argument that De L'Isle and Holding BEV were agents of Impleaded Third Party, Judgment Creditor submits credit card records which demonstrate that Impleaded Third Party paid for approximately $400,000 in expenses that De L'Isle incurred when pursuing business on behalf of Holding BEV over a period of five years. Apparently, Impleaded Third Party obtained a credit card for De L'Isle, allowed him to use it for several years, and paid the balance on the card.

■ "The elements of an agency relationship under Florida law are (1) acknowledgement [sic] by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *State v. Am. Tobacco Co.,* 707 So.2d 851, 854 (Fla.Dist.Ct.App.1998). "The issue of control is critical to the determination of agency." *Id.* As the Fourth District Court of Appeals held in *American Tobacco,* a litigant needs to demonstrate "*operational* control" in order to demonstrate that a principle operated, conducted, engaged in, or carried on business activities within Florida through agents pursuant to Florida Statutes § 48.193(1)(a). *Id.* at 856 (emphasis in original). Evidence of operational control includes, for instance, evidence that the principal controlled the internal affairs of an agent or determined how the agent operated on a daily basis. *Id.* at 855–56 (citing *Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177–78 (9th Cir.1980)).

Here, Judgment Creditor's evidence demonstrates that Impleaded Third Party gave Judgment Debtor De L'Isle (and, by extension, Holding BEV) what was in essence a blank check through the use of a credit card account. Although Impleaded Third Party had the authority to control De L'Isle's use of the card by cutting him off, Judgment Creditor submits no evidence to suggest that Impleaded Third Party used this authority to exercise operational control of Judgment Debtors' activities in Florida. Accordingly, Judgment Creditor fails to demonstrate that the Court has personal jurisdiction over Impleaded Third Party through business activities conducted by his agents in Florida.

■ With regard to Judgment Creditor's argument that Judgment Debt-

ors were alter egos of Impleaded Third Party, Judgment Creditor must prove three elements in order to pierce any alleged corporate veil between Judgment Debtors and Impleaded Third Party. First, Judgment Creditor must show that Impleaded Third Party "dominated and controlled" Judgment Debtors to such an extent that their "independent existence[ ] was in fact non-existent." *Seminole Boatyard, Inc. v. Christoph,* 715 So.2d 987, 990 (Fla.Dist.Ct.App.1998). Second, Judgment Creditor must show that the corporate form of Judgment Debtors was "used fraudulently or for an improper purpose." *Id.* Third, Judgment Creditor must demonstrate that "the fraudulent or improper use of the corporate form caused injury" to him. *Id.*

Here, pretermitting the first two elements, Judgment Creditor has not demonstrated how any improper use of the corporate form caused injury to him. Judgment Creditor alleges that had he known that Judgment Debtors were undercapitalized and required financial assistance from Impleaded Third Party, he would never have pursued the contract that ultimately led to his damages in this action. Judgment Creditor's contract, however, was executed in 1997. Judgment Debtors' use of Impleaded Third Party's credit card did not begin until 1999. Accordingly, Judgment Creditor could not have been misled by any abuse of the corporate form by Impleaded Third Party. Therefore, he cannot demonstrate personal jurisdiction through any alter ego relationship between Impleaded Third Party and Judgment Debtors.

■ Finally, Judgment Creditor argues that Impleaded Third Party and Judgment Debtors were partners, and therefore whatever business activities Judgment Debtors performed in Florida can be imputed to Impleaded Third Party.

Under the Florida Revised Uniform Partnership Act (FRUPA), "the association of two or more persons to carry on as coowners [of] a business for profit forms a partnership, whether or not the persons intend to form a partnership." Fla. Stat. § 620.8202(1). As stated in the Uniform Comments to this provision:

[T]he attribute of co-ownership distinguishes a partnership from a mere agency relationship. A business is a series of acts directed toward an end. Ownership involves the power of ultimate control. To state that partners are co-owners of a business is to state that they each have the power of ultimate control.

FRUPA, Fla. Stat. § 620.8202 cmt. 1.

■ In determining the existence of a partnership, courts have focused on indicia of control, among other factors such as sharing in profits and losses and common interest in business goals. "To establish a partnership, there must be a 'community of interest in performance of a common purpose, *joint control or right of control,* joint propriety of interest in subject matter, right to share in the profits, and duty to share in any losses which may be sustained.'" *Dreyfuss v. Dreyfuss,* 701 So.2d 437, 439 (Fla.Dist.Ct.App.1997) (emphasis added). Under Florida law, a partnership cannot exist unless all of the above factors, including joint control or right of control, are present. *Williams v. Obstfeld,* 314 F.3d 1270, 1276 (11th Cir.2002).

Here, Judgment Creditor provides no evidence that Impleaded Third Party had control or a right of control over Judgment Debtors' business activities related to the underlying contract in this dispute. As stated above, giving De L'Isle a blank check is not tantamount to having control over De L'Isle's business activity. If it were, any creditor of an individual in business would be the individual's partner. Judgment Creditor's allegation that De L'Isle and Impleaded Third Party were

affiliated in a separate business venture in the United Kingdom is unavailing. Judgment Creditor provides no evidence that this separate venture had anything to do with Judgment Debtors' business activities pertinent to this dispute. Accordingly, Judgment Creditor has failed to demonstrate that the Court can exercise personal jurisdiction over Impleaded Third Party under Florida's long-arm statute through business activities in Florida accomplished in a partnership with Judgment Debtors.

Finally, the Court notes that Judgment Creditor alleged several other grounds for personal jurisdiction over Impleaded Third Party in his Impleader Complaint. As Judgment Creditor has failed to support these allegations with record evidence in his response to the Motion to Dismiss, the Court cannot find that any of these allegations give rise to personal jurisdiction over Impleaded Third Party.

Because Judgment Creditor has failed to satisfy any jurisdictional prerequisites of Florida's long-arm statute, the Court need not proceed with the second part of the personal jurisdiction analysis concerning the Due Process Clause. The Court shall grant Impleaded Third Party's Motion to Dismiss.

## II. *MOTION TO STRIKE*

Judgment Creditor has filed a Motion for an order to show cause why Impleaded Third Party should not be held in contempt of court because of alleged misrepresentations in the declaration filed in support of his Motion to Dismiss. In response, Impleaded Third Party has filed a Motion to Strike, arguing that Judgment Creditor's Motion lacked a memorandum of law required by Rule 7.1.A.1 of the Local Rules of the United States District Court For the Southern District of Florida. Impleaded Third Party also argues that Judgment Creditor's Motion violates his Due Process rights. Neither argument has merit.

 First, Local Rule 7.1.A.1 requires that "[e]very motion when filed shall include or be accompanied by a memorandum of law citing supporting authorities." Courts which have denied motions on the basis that they lacked legal memoranda or citations to supporting authorities have generally done so where there were no memoranda or citations at all. *See, e.g., United States v. Vernon,* 108 F.R.D. 741, 742 (S.D.Fla.1986) (denying motion, in part, because it was "devoid of any legal authority" and lacked supporting memorandum of law); *Montgomery v. First Family Fin. Servs., Inc.,* 239 F.Supp.2d 600, 602 n. 1 (S.D.Miss.2002) (denying motion that was "completely devoid of both argument and authority" (internal quotes omitted)); *Piquard v. City of East Peoria,* 887 F.Supp. 1106, 1127 (C.D.Ill.1995) (rejecting argument "presented without any citation to authority and supportive legal memorandum").

Here, Judgment Creditor's Motion merely raises additional evidence to support an earlier Motion For an Order of Contempt. (*See* Emergency Motion for an Order of Contempt Against Pyrros Vardinoyannis and Issuance of a Writ Ne Exeat Republica (Nov. 29, 2005) [DE 669].) Although brief, this earlier Motion included legal argument and citation to legal authority, as required by Local Rule 7.1.A.1. (*Id.* at 3.) Although the instant Motion does not specifically incorporate earlier legal argument, it is obvious from the context that Judgment Creditor was renewing this same legal argument.[2] Therefore, the

---

**2.** The Court notes that Judgment Creditor would have been much safer had he specifically incorporated his prior legal argument in his Motion and should take care to ensure

compliance with rules of procedure in the future. The Court does not wish to suggest through the instant ruling that parties should

Court does not deem it appropriate to strike Judgment Creditor's Motion for non-compliance with Local Rule 7.1.A.1.

■ Second, Impleaded Third Party argues that Judgment Creditor's Motion does not comport with Rule 42 of the Federal Rules of Criminal Procedure and therefore violates Impleaded Third Party's Due Process rights. Rule 42 "simply makes more explicit the long-settled usages of law governing the procedure to be followed in contempt proceedings." *Brown v. United States*, 359 U.S. 41, 51, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959) (internal quotes omitted). Except in cases where summary disposition is justified, the Rule provides for notice and a jury trial. Fed. R.Crim.P. 42(a). Notice must be either in open court, by order to show cause, or by an arrest order. *Id.*, Rule 42(a)(1). Following notice, the "court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney." *Id.*, Rule 42(a)(2).

Impleaded Third Party suggests that Judgment Creditor cannot bring a motion for an order to show cause because only the Court has the authority to initiate a contempt proceeding under Rule 42. A motion for an order to show cause, however, does not initiate Rule 42 proceedings. Judgment Creditor's Motion merely requests that the Court initiate such proceedings.[3] Accordingly, the Motion does not violate Rule 42 or Impleaded Third Party's Due Process rights.

For the foregoing reasons, the Court shall deny Impleaded Third Party's Motion to Strike.

### III. *MOTION FOR CONTEMPT*

■ Judgment Creditor provides several reasons why the Court should issue an order to show cause why Impleaded Third Party should not be held in contempt. All of these reasons relate to statements Impleaded Third Party made in his declarations in support of his Motion to Dismiss. First, Judgment Creditor notes that Impleaded Third Party failed to mention De L'Isle's use of a second credit card of Impleaded Third Party's for $935.21 in charges from the New York Athletic Club in November 2004. Judgment Creditor argues that this additional charge belies Impleaded Third Party's claims that he lacks any business affiliation with Judgment Debtors. The Court respectfully disagrees. As explained above, simply giving De L'Isle a blank check without control over the spending or ownership interests in the business venture is not tantamount to a business affiliation, whether by agency, partnership, alter ego, or otherwise. Accordingly, the Court finds no discrepancy between this second credit card use and Impleaded Third Party's declarations. The fact that Impleaded Third Party failed to disclose the second credit card in any of his declarations is insignificant. Impleaded Third Party could have reasonably believed that this $935.21 gift or friendly loan did not amount to a business affiliation and therefore did not require an explanation.

Second, Judgment Creditor provides evidence that Impleaded Third Party and De L'Isle were both affiliated with a company called Sonic Ltd. Impleaded Third Party was a director; De L'Isle was an employee who received approximately £39,000 in

in any way disregard their duties to abide by court rules.

**3.** The Court acknowledges that the title of Judgment Creditor's Motion, "Judgment Creditor's Second Motion For an Order of Contempt Against Impleaded Third Party,"

suggests that he is asking for a contempt order. Nevertheless, the Motion itself requests no more than an order to show cause. (*See* Judgment Creditor's Second Motion For an Order of Contempt Against Impleaded Third Party at 1–2, 6 (Dec. 27, 2005) [DE 711].)

2002–2003. Judgment Creditor argues that this evidence also belies Impleaded Third Party's claim that he has no business affiliation with Judgment Debtors.

Impleaded Third Party explained in a follow-up declaration, however, that he "never made any decisions or participated in any activities as a director in furtherance of [Sonic's] purpose or operation." (Second Decl. of Pyrros Vardinoyannis, ¶ 4, attached as Ex. C to Impleaded Third Party's Reply Memo. in Support of Impleaded Third Party's Mot. to Dismiss Impleader Compl. For Lack of Personal Jurisdiction (Dec. 21, 2005) [DE 708].) Impleaded Third Party recognized that De L'Isle was an employee with Sonic, but Impleaded Third Party stated that he "never had any business relations with [De L'Isle] with respect to that company." (*Id.*)

Given this explanation, the Court finds that Impleaded Third Party made his claim regarding the lack of business affiliation with Judgment Debtors in good faith. Impleaded Third Party's activities as director of Sonic were apparently limited. As a director, he did not exercise any control over the activities of Sonic or its employees, and the company itself was rather short-lived. Therefore, Impleaded Third Party could have reasonably believed that he did not have any business affiliation with Judgment Debtors despite his position at Sonic.

Third, Judgment Creditor submits evidence that Impleaded Third Party provided De L'Isle with a cell phone, which De L'Isle used for business activities related the underlying contract in this dispute. This evidence does not undermine Impleaded Third Party's statement that he has no business affiliation with Judgment Debtors. Impleaded Third Party testified by deposition that he allowed De L'Isle to use the phone just as he allowed his mother and his maternity nurse to use to the phone. (Dep. of Pyrros Vardinoyannis at 99 (Dec. 8, 2005) [DE 687].) Furthermore, he did not control or attempt to control how De L'Isle used the phone, nor did he know how De L'Isle used it. (*Id.* at 99–100.) Accordingly, the Court finds no contumacious behavior based on Judgment Creditor's cell phone evidence.

Finally, Judgment Creditor notes that both De L'Isle and Impleaded Third Party have bank accounts at Dexia Banque Internationale à Luxembourg, S.A. in Luxembourg and that Impleaded Third Party has refused to sign a release for bank records, if any, which show transfers between the accounts. In addition, Judgment Creditor notes that in his exceptions to the Special Master's recommendation that the Court order Impleaded Third Party to execute a release, Impleaded Third Party implies that bank transfers between him and De L'Isle do, in fact, exist. (*See* Impleaded Third Party's Exceptions to Special Master's Report and Recommendation Ordering Pyrros Vardinoyannis to Execute Releases Directed to Dexia Banque Internationale à Luxembourg, S.A. to Release Bank Documents Related to Any Transfers from Pyrros Vardinoyannis to Any of Judgment Debtors, Including BEV Development, S.A. at 13 (Dec. 12, 2005) [DE 692] ("At most, the bank accounts will show that funds were transferred from Mr. Vardinoyannis' Luxembourg account to another Luxembourg account.").) Therefore, Judgment Creditor argues that this evidence demonstrates Impleaded Third Party's declarations are false.

Judgment Creditor has shown, at best, that it merely lacks evidence to demonstrate that Impleaded Third Party's declaration claims are false. Even assuming, without agreeing, that the above evidence demonstrates transfers between Impleaded Third Party and Judgment Debtors, such alleged transfers do not automatically

give rise to a business affiliation. Indeed, as the Court explained above, merely conferring money to an individual does not create a business affiliation. Accordingly, the Dexia bank evidence does not demonstrate that Impleaded Third Party's claims are false.

Considering all of the above in its entirety, the Court does not find any evidence of wrongdoing on Impleaded Third Party's part. Judgment Creditor's Motion For an order to show cause why Impleaded Third Party should not be held in contempt shall be denied.

## IV. *CONCLUSION*

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Impleaded Third Party's Motion to Dismiss Impleader Complaint [DE 644] is **GRANTED.**

2. Judgment Creditor Joseph D. Harbaugh's Second Motion For an Order of Contempt Against Impleaded Third Party [DE 711] is **DENIED.**

3. Judgment Creditor's Motion For Leave to File a Sur–Reply to Impleaded Third Party's Reply in Support of Impleaded Third Party's Motion to Dismiss Impleader Complaint [DE 712] is **GRANTED.**

4. Impleaded Third Party's Motion to Strike Judgment Creditor's Second Motion For an Order of Contempt Against Impleaded Third Party [DE 713] is **DENIED.**